## ALLEN, (UNITED STATES v.)

[See United States v. Allen, Case No. 14,430; Id. 14,431; and Id. 14,432.]

## Case No. 240.

### ALLEN et al. v. UNITED STATES.

[Taney, 112.][1]

Circuit Court, D. Maryland. Nov. Term, 1840.

JUDGMENTS—OPERATION AND EFFECT—DECREE IN ADMIRALTY—RES JUDICATA.

1. In a suit, instituted by the United States in the district court, upon a bond given by the owners and master of an American vessel, under the seventh section of the act of 31st December 1792, conditioned for the proper use and delivery up of the certificate of registry granted to such vessel under that act, the breach relied upon was, that subsequently to the granting of such certificate, the vessel was sold to a foreigner, at Havana, but that the obligors in the bond did not deliver up said certificate of registry, as required by the act of 1792. The defendants, in rebuttal, offered in evidence the record of a proceeding in rem, instituted by the United States against the vessel, in the district court for the southern district of New York, in which her condemnation was sought, for a violation of the acts of congress in relation to the slave-trade; by this record it appeared that the libel was dismissed, upon the ground, "that it appeared that the said vessel, when arrested, was not employed, or made use of, as a vessel of the United States, in transporting or carrying slaves from one foreign country or place to another, within the meaning or intent of the act of congress of May 10, 1800;" and she was accordingly ordered to be delivered up to the claimant, who, by the record, appeared to be a citizen of the United States, residing at Havana.

2. This record was excluded by the district court, as inadmissible in the suit upon the bond: held, 1. That the record of the suit in rem, if admissible at all, for the purposes for which it was offered, must be conclusive; the act of assembly of Maryland of 1813, c. 164, restricts only the conclusive effect of sentences in rem of foreign tribunals, and its application must be confined to them. 2. The record was properly excluded by the district court; the doctrine, that sentences of this kind are evidence against all the world, and binding, even upon those who are not parties, has been confined to civil cases, and even in them it is confined to those parties who have a direct or incidental interest in the suit; it has never been applied to criminal proceedings, or to suits for the recovery of penalties. The present suit, though a civil one in form, sounding in contract, is, in

---

[1][Reported by Hon. William Cranch, Chief Judge.]

[1][Reported by James Mason Campbell, Esq., and here reprinted by permission.]

substance, an action for the recovery of a penalty, and has no connection with the proceeding in the admiralty.

[Error to the district court of the United States for the district of Maryland.]

[At law. Action of debt by the United States against Robert W. Allen, John Henderson, and James Swedge on a bond. Judgment in district court for plaintiff. Defendants bring error. Affirmed.]

TANEY, Circuit Justice. This case is brought here by writ of error from the district court. It appears by the record, that an action of debt was brought in the district court, by the United States against the plaintiffs in error, upon a bond for $1200, dated 20 May 1839, given by them, under the act of December 31, 1792, § 7, for the proper use and delivery up of the certificate of the registry of the schooner Catharine, built in Baltimore in the year 1839, of which Robert W. Allen and John Henderson were the only owners, and James Swedge was, at that time, master. The defendants pleaded, by consent, nil debent, upon which issue was joined, with leave to either party to give the special matter in evidence. The breach relied on at the trial, in behalf of the United States, was, that after this certificate of registry was given, the vessel was sold at Havana, in the Island of Cuba, and was there purchased by a foreigner; that the master afterwards returned to the United States, in June or July 1839, but that the certificate of registry had not been delivered up, according to the directions of the act of congress. The suit was instituted on the bond, on the 12th October 1839, and the case was tried in the district court, at March Term, 1840. The verdict was in favor of the plaintiff for the penalty of the bond, and the judgment entered accordingly.

The defendants, in the district court, in order to rebut the evidence offered by the United States, and to show that the Catharine was not purchased, at Havana, by a foreigner, offered in evidence the record of a proceeding in the district court of the United States for the southern district of New York; by which it appeared, that an information had been filed in that court, on the 30th of December 1839, against the Catharine, and her condemnation prayed for by the district attorney of the United States, for a violation of the acts of congress in relation to the slave-trade. The libel charged various offenses under the act of 22 March 1794, and it also charged that the said vessel, being wholly or in part the property of citizens of the United States, or of persons residing in the United States, was, on or about the 1st July 1839, employed by some person residing in the United States, in the transportation and carrying of slaves from some foreign country or place, to some other foreign country or place, contrary to the act of congress of 10 May 1800, which subjects vessels so employed to forfeiture. To this

libel an answer was put in, on the 27th March 1840, by Charles Ting, a citizen of the United States, residing at Havana, claiming the Catharine as his property, under a transaction at Havana, with the agent of the American owners, which he particularly details; and denying that the vessel, at the time of her arrest on the high seas (which he states to have been on the 8th of August 1839, after he had become the owner), was engaged in the transportation of slaves, as charged in the libel. The case was submitted to the court upon this libel and claim, and after hearing counsel on both sides, the court adjudged "that it appearing that the said vessel, when arrested, was not employed or made use of as a vessel of the United States, in transporting or carrying slaves from one foreign country or place to another, within the meaning and intent of the act of congress of 10 May 1800," it was therefore ordered, that the libel be dismissed, and that the vessel be discharged from arrest and delivered to the claimant.

The counsel for the United States objected to the admission of this record in evidence, and the objection was sustained by the court; whereupon the defendants in the court below excepted, and have brought the case to this court by writ of error; and the only question presented here is, whether the district court erred in refusing to admit this record, or any part of it, in evidence. The counsel for the plaintiffs in error contend, that the proceeding in the district court of New York, being a proceeding in rem, the sentence of the court is evidence of the matters decided by it, when the same points arise in other courts; that the court expressly grounds its sentence upon the fact, that the vessel, at the time of her arrest, was not employed in the slave-trade, as a vessel of the United States; and that the sentence, therefore, decides her national character, as well as the nature of her employment. And it is insisted on the part of the plaintiffs in error, that this sentence is admissible, for the purpose of rebutting the evidence offered on the part of the United States; and in order to show that the Catharine had not been sold to a foreigner, at Havana, before she sailed on the voyage in which she was arrested, but was the property of the claimant, Charles Ting.

It is proper here to remark, that if this evidence is admissible at all, to prove the facts above mentioned, it must be conclusive. This principle has been settled by repeated decisions in the supreme court, as the general rule of law in relation to sentences of this description; and the act of assembly of Maryland of 1813, c. 164, (if it could, upon any ground, affect the rule, where two courts of the United States are concerned), is confined to the sentences of foreign tribunals, and restricts their conclusive effect, but does not propose to change the law in relation to the decisions of our domestic courts. Now,

the sentence relied on, as conclusive evidence, to show that the Catharine, when arrested, still retained her American character, is a sentence of acquittal. But yet it is evident, that a sentence of condemnation would have implied her American character far more strongly that a sentence of acquittal; for although it was certainly necessary, in order to condemn her, that the court should have been satisfied that she was owned by an American citizen, or by some person residing in the United States, yet it was by no means necessary to establish such ownership to entitle her to acquittal; and the argument on the part of the plaintiffs in error, if successful, would prove that the sentence of the district court of New York, whether it condemned or acquitted the vessel, necessarily involved and decided her national character, and showed it to be American. There must obviously be some fallacy in an argument which would lead to this result, and which would show that upon such a libel, and such a claim, the sentence of the court (no matter whether it was given the one way or the other) established conclusively, against all the world, that she was a vessel of the United States, so as to preclude inquiry upon that subject in any other court. But the court thinks it very clear, upon the face of the proceedings and sentence, that the court of New York did not acquit the Catharine, because it was satisfied that she was an American vessel; but because, in the judgment of the court, she was not engaged in the transportation of slaves. Indeed, from the language of the sentence, it might, perhaps, be inferred that she was acquitted upon the ground that she was not an American vessel. The language of the sentence is, that she was not employed, or made use of, "as a vessel of the United States," in the transportation of slaves; and this language may be understood to imply that she was made use of for that purpose, but not as a vessel of the United States. The court may have been of opinion that, under the transaction stated by Ting, she had lost her American character, and become Spanish property, and therefore, not liable in our tribunals on account of her employment in the slave-trade. But whether the acquittal was upon the ground that she was not a vessel of the United States, or was not engaged in the slave-trade; yet, if she was not liable to condemnation, she would, of course, be delivered up to Ting, as no other claimant appeared before the court; and it appeared that the vessel, when arrested, was in his possession, and under his control and direction, either as owner or as agent for the owners. The sentence of acquittal, and the delivery to Ting, do not, therefore, affirm the property to be in him, nor the vessel to be American.

But, if the American character of the vessel was necessarily involved in, and expressly affirmed by, the decision, yet, it could not have been received as evidence in the case before the court. The doctrine that judgments of this description are evidence against all the world, and are binding even upon those who were not parties to them, has always been confined to civil cases; and in civil cases, the rule is not universal, but is confined to those who have a direct or incidental interest in the condemnation or acquittal of the vessel libelled, and who may, therefore, if they choose, make themselves parties. In the case of The Mary, 9 Cranch, [13 U. S.] 144, the supreme court (speaking of such sentences) have said: "they bind the subject-matter, as between parties and privies;" and this, it seems, upon principle, must be the true application of the rule in civil suits. But the rule has never been applied to criminal proceedings, nor to suits for penalties; and it has been decided by this court, in the case of the U. S. v. Montell, [Case No. 15,798,] that a suit upon a bond of this kind, though in form, a civil suit and sounding in contract, is yet, in substance and reality, a suit for a penalty inflicted for an offense against the law; for which penalty surety is taken in advance from those whose misconduct may render them liable to punishment. In the case of The Mary, above referred to, the sentence of the court of admiralty would not have been conclusive in a civil case, except between parties and privies to the suit against the vessel. But the case before the court is a suit to recover a penalty against the plaintiffs in error; and if the sentence of the district court of New York had declared that the Catharine, at the time of the arrest, was a Spanish vessel, owned by a subject of the queen of Spain, and therefore, not liable to condemnation under our laws, though actually engaged in the transportation of slaves; would any one suppose that such a sentence would have been conclusive upon the plaintiffs in error, and have compelled them to pay this bond, without an opportunity of proving that the vessel had never been sold to any one after she had obtained her certificate of registry? Such a proposition would hardly be seriously pressed upon the court, yet the rule must be reciprocal; and if the present sentence (supposing it to be a direct affirmation of American ownership) would conclude the United States upon that point, a contrary affirmation would be equally conclusive upon the obligors in the bond. But the suit on the bond has no connection whatever with the proceedings in admiralty, in the district court of New York; nor is the matter in controversy here, in any respect, connected with, or dependent upon, those proceedings. It is a suit for a penalty, and the United States must, by testimony adduced here, prove that the penalty has been incurred; the parties charged have, undoubtedly, the right to adduce testimony, and to be heard in their defence; and are not and cannot be concluded by any decision made elsewhere, to which

they were not parties, and in the issue of which they had no interest. The decision of the district court of New York, upon a proceeding against the vessel, for a violation of the law in relation to the slave-trade, cannot be evidence in a suit between different parties, brought to recover a penalty' inflicted by a different act of congress, for the misconduct of the master in not delivering up her certificate of registry, as required by law. The judgment in this case must, therefore, be affirmed.